```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
DAN GROPPER,                             :
                                         :        13 Civ. 2820
                    Plaintiff,           :
                                         :        OPINION AND ORDER
          -v-                            :
                                         :
FINE ARTS HOUSING, INC. AND NOBU         :
ASSOCIATES, L.P. D/B/A NOBU,             :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For the Plaintiffs:

Glen H. Parker and Adam S. Hanski
Parker Hanski LLC
40 Worth Street, 10th Floor
New York, NY 10013


For the Defendants:

Loren L. Forrest, Jr. and Howard Sokol
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019


DENISE COTE, District Judge:

    Dan Gropper ("Gropper"), a disabled individual, brought this action alleging that Fine Arts Housing, Inc. ("FAH") and Nobu Associates, L.P. d/b/a Nobu ("Nobu") have discriminated

1

against him because of his disability and have conspired to deprive him of his civil rights. He brings six claims under 42 U.S.C. § 1985; Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, and its implementing regulations; N.Y.S. Executive Law § 296; N.Y.S. Civil Rights Law § 40; the N.Y.C. Administrative Code § 8-107; and New York tort law. He seeks compensatory, declaratory, and injunctive relief, as well as attorney's fees.

The defendants have filed a motion to dismiss. For the following reasons, the motion is granted in part.

BACKGROUND

The complaint includes the following allegations. Gropper suffers from medical conditions that inhibit his ability to walk and his body's range of movement. He uses a wheelchair for mobility and has restricted use of his hands and arms.

Nobu's Alleged Disability Violations

Gropper brings this disability discrimination action against the world-famous "Nobu New York" restaurant ("Nobu Restaurant"), located at 105 Hudson Street in the Tribeca neighborhood of Manhattan, New York. Defendant FAH owns the

2

property at 105 Hudson Street; defendant Nobu leases the property to operate the restaurant.  This location is, according to the New York City Landmarks Preservation Commission ("LPC"), within the historic "Tribeca West" district, and thus owners are required to obtain an LPC permit before doing any work to a landmark property.

The complaint lists forty-five architectural barriers at Nobu Restaurant that prevent and/or restrict access to disabled individuals, including Gropper.  These can be grouped as follows: (1) Nobu Restaurant's entrances are neither accessible for disabled individuals nor properly signed, and its alternate entrance does not coincide with general public circulation; (2) Nobu Restaurant fails to provide a sufficient number of public entrances that are accessible for disabled individuals; (3) Nobu Restaurant's interior layout does not generally provide sufficient space for disabled individuals, including specifically a lack of maneuvering clearance for wheelchair-bound individuals; (4) Nobu Restaurant's host counter is not accessible for disabled individuals; (5) the route to Nobu Restaurant's dining and seating is not accessible for wheelchair-bound individuals, and its designated accessible seating is not properly signed; and (6) Nobu Restaurant's

3

bathrooms do not comply with various requirements for disability access.

VCA Between Nobu and Justice Department

Defendants' motion to dismiss relies principally on a Voluntary Compliance Agreement ("VCA") entered into between Nobu and the Department of Justice in the Fall of 2013. Because the VCA appears to be a public record and plaintiff had not disputed consideration of the VCA at this stage, it shall be discussed.[1]

The whereas clauses of the VCA describe the circumstances giving rise to the VCA. At some point in time before the Fall of 2013, the Department of Justice commenced a limited review of certain restaurants in New York City to determine whether they were operating in compliance with Title III of the ADA. As part of this compliance review, the Justice Department requested

---

[1] The parties dispute whether this Court may consider two of defendants' submissions -- a declaration of Wade Newman and an attached "expert" report. Gropper challenges the authenticity of these documents, contends that it requires discovery of documents referenced in these submissions to understand the proper context of the submissions, and argues that the submissions are not integral to the complaint and thus are not appropriate for consideration at the motion to dismiss stage. Defendants respond that, because their principal argument relates to subject-matter jurisdiction, the Court must consider such information to establish jurisdiction over the suit. The Court need not resolve this dispute, because consideration of the Newman declaration and the attached report would not alter any of the analysis and conclusions in this Opinion.

information on Nobu Restaurant and conducted a limited site inspection.  The Justice Department decided, in light of the actions that Nobu has already taken and the actions that it promised to the take in the VCA, to take no further enforcement action with respect to Nobu Restaurant as a result of its compliance review.

As relevant here, Nobu agreed to make four categories of changes in the VCA.  These categories relate to Nobu Restaurant's public entrance, dining area, host station, and restrooms.

With regard to the public entrance, the VCA states -- after listing the various ADA violations in the current designated alternate entrance on Franklin Street -- that Nobu promises to ensure that this entrance is "accessible to, and usable by, persons with disabilities, including persons using wheelchairs for mobility."  Specifically, Nobu will modify this entrance by "installing a permanent ramp, replacement door with automatic door opener, and signage."  Additionally, Nobu will provide proper directional signage indicating the location of the alternate entrance from the main public entrance on Hudson Street.  Nobu promises to use its "best efforts" to obtain approvals for this installation from the New York City

Department of Buildings; the New York City Landmarks Preservation Commission; and its landlord, defendant FAH. Further, Nobu promises to commence modifying the alternate entrance within three months of the date that the approvals are granted and promises to complete its modification within nine months of the same date.

With regard to the dining area, Nobu promises to make five percent of the seating locations at fixed dining surfaces accessible to disabled individuals, which translates to three seating locations that are accessible to wheelchair-bound individuals.  These locations would be distributed throughout the restaurant.  Nobu promises to complete these changes within six months of the effective date of the VCA.

Additionally, Nobu promises to provide an accessible route to these designated seating locations.  At the time of its inspection, the Justice Department found that the access aisle was not sufficiently wide.  Nobu has since reported that it removed one of its interior decorative trees to clear sufficient aisle space, which the Justice Department has accepted as constituting compliance.  Further, Nobu promises to either make all dining areas, including a raised semi-private dining area, accessible to disabled individuals, or alternatively to provide

6

accessible semi-private dining upon request.

With regard to the host station, Nobu promises that the routes to and from the host station would be handicapped accessible. Finally, with regard to bathrooms, Nobu promises to build a unisex handicapped accessible bathroom on an accessible route within eight months of the effective date of the VCA.

The term of the VCA is set at three years from the effective date. Nobu promises to submit annual reports during that time. The Justice Department has the right to ensure compliance through site inspection or communications with the restaurant staff. And Nobu promises to cooperate with the Justice Department's monitoring in good faith. Further, if the Justice Department believes Nobu to have violated the terms of VCA, it may bring a civil suit to enforce the VCA in the Southern District of New York.

The final section of the VCA is titled "General Provisions." It states (or rather re-states) that the consideration for Nobu's performance of its obligations under the VCA is the Justice Department's discontinuance of its compliance review. It makes explicit, however, that nothing in the VCA limits the Justice Department's right to investigate any complaints it receives concerning Nobu Restaurant, to initiate a

7

further compliance review, and to commence a civil action with respect to any violation of the ADA.  Further, while the VCA acknowledges that it memorializes commitments that Nobu makes to "increase accessibility" of Nobu Restaurant, the VCA

> is not intended to certify, or signify, . . . that the Restaurant is now (or, with the actions taken pursuant to this Agreement, will be) in full compliance with the ADA, or constitute a finding by the United States of such compliance, and it may not be used in any proceeding to signify such compliance.

The VCA was signed on August 30, 2013 by Drew Nieporent, owner and operator of Nobu.  It was signed on September 9, 2013 by representatives of the Department of Justice.  The VCA was effective as of the latter date.

Procedural History

On April 29, 2013 -- prior to the signing of the VCA -- Gropper filed the complaint in this action.  The first two claims in the complaint are federal claims, whereas the remaining are state law claims.  Because defendants' present motion relates almost exclusively to the federal claims, only they will be discussed here.

Gropper's first claim is brought under 42 U.S.C. § 1985, and it alleges that the defendants conspired with each other to deprive Gropper of equal protection of the laws.  Gropper

8

alleges that defendants conspired "through an agreement and/or tacit understanding" to violate the anti-discrimination laws with respect to disability access, in order to unjustly enrich themselves by making profit from space that should have been set aside for disability access. Defendants' alleged conspiracy involved designing, operating, and maintaining Nobu Restaurant with its architectural barriers preventing equal access by disabled individuals.

Gropper's second claim is brought under Title III of the ADA. It alleges that Gropper has a disability within the meaning of the ADA, and that defendants operate a place of public accommodation. Gropper alleges that defendants' failure to provide full and equal opportunity to use their place of public accommodation subjected him to disparate treatment and disparate impact because of his disability. Specifically, Gropper alleges that the previously identified architectural barriers that prevent access to disabled individuals violate the ADA and its implementing regulations, and further alleges that the defendants failed to remove barriers to access or to make accommodations that were readily achievable. In the alternative, Gropper alleges that defendants failed to provide him with reasonable alternatives to barrier removal. Such

9

conduct, alleges Gropper, discriminated against him on the basis of disability.

On November 15, 2013, defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. The motion was fully submitted as of December 20.

DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P., the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). A district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. Id. "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008) (citation omitted).

When deciding a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation omitted).

In moving to dismiss, defendants principally argue that, because Nobu has promised to resolve through the VCA most of the issues concerning the barriers alleged in Gropper's complaint, most of Gropper's ADA claims are now moot and any remaining ADA claims may be dismissed as frivolous.  Defendants then argue that Gropper's § 1985 claim does not state a claim for which relief can be granted and, in the alternative, is not adequately pled.  Defendants conclude by arguing that, because both federal claims must be dismissed, the Court should not exercise supplemental jurisdiction over the state law claims.

I. ADA Claims

Defendants argue that all non-frivolous ADA claims, as stated in the April 29, 2013 complaint, are moot because Nobu entered into the VCA in the Fall of 2013, whereby Nobu either already removed the ADA barriers Gropper has alleged or is contractually bound to remove such barriers. Defendants therefore conclude that, under Rule 12(b)(1), Fed.R.Civ.P., this Court lacks subject-matter jurisdiction over the non-frivolous ADA claims.

The mootness doctrine is derived from "Article III of the Constitution," which "grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.' In our system of government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (citation omitted). Accordingly, "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." Id. (citation omitted).

"A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id. (citation omitted).

12

Generally, "the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  Id. at 727 (citation omitted).

The "voluntary cessation" exception to the mootness doctrine recognizes, however, that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  Id.  "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  Id.; see also Knox v. SEIU, 132 S. Ct. 2277, 2287 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

Given this concern, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).  "The heavy

13

burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id. (citation omitted). This Circuit applies a two-part test to determine when voluntary cessation may render a case moot: "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 110 (2d Cir. 2010) (citation omitted) (emphasis added).

The defendants have relied on the VCA, and their promise of voluntary compliance with its terms, to argue that Gropper's non-frivolous federal claims are now moot. It is true that the majority of Gropper's ADA claims -- Nobu Restaurant's lack of an accessible public entrance, adequate interior space and access aisles, and ADA-compliant bathroom -- are addressed in the VCA. Accordingly, under ordinary mootness principles, there is no longer a live controversy as to these claims. But, because the VCA consists largely of promises that Nobu will fulfill in the future, it cannot be contended that Nobu has "completely and irrevocably eradicated the effects" of the alleged ADA

14

violations.

One example suffices to show the provisional nature of the resolution.  Nobu has promised in the VCA to install an ADA-compliant permanent entrance ramp, but it must first acquire municipal approvals, including from the LPC, which may take time.  The VCA does not give a particular timeline by which such approvals must be gained; Nobu only promises to use its "best efforts" to acquire such approvals.  Even if Nobu gains authorization to install the ramp, it may take up to nine months to complete the installation.  Thus, with respect to just this one example, Nobu may not resolve its alleged ADA violation for years.

Given that at least one of the plaintiff's principal claims is not moot, it is unnecessary to resolve whether several other claims have been rendered moot by the existence of the VCA.  But, the existence of the VCA does raise the question of whether this action should not be stayed during the three-year term of the VCA, i.e., until September 9, 2016.  See Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

15

counsel, and for litigants." (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In a concurrently filed Order, the parties will be invited to address that issue.

II. Section 1985

Defendants also move to dismiss Gropper's Section 1985 claim. Section 1985 provides in relevant part that

> [i]f two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. See United Bhd. of Carpenters of Am., Local 610 v. Scott, 463 U.S. 825, 833 (1983).

A conspiracy claim under § 1985 requires a showing of

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-

16

>based, invidious discriminatory animus behind the conspirators' action.

<u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted).  "[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." <u>Thomas v. Roach</u>, 165 F.3d 137, 147 (2d Cir. 1999).  This includes particularized allegations that "establish the existence of an agreement among the defendants to deprive [the plaintiff] of his constitutional rights."  <u>Id.</u>

Gropper has failed to plead with sufficient particularity this conspiracy claim.  Specifically, Gropper has failed to allege the most fundamental aspect of a conspiracy: an agreement.  None of the allegations in the complaint plausibly allege that defendants made an agreement for the purpose of depriving disabled individuals of their civil rights.  Any references to an "agreement" in the complaint are merely "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  <u>Iqbal</u>, 556 U.S. at 678.  Thus the motion to dismiss is granted as to the Section 1985 conspiracy claim.

Gropper asks this Court to infer the existence of an

17

agreement from the alleged violations of federal, state, and local disability laws.  To accept such an argument would permit every civil rights case to become a civil rights conspiracy case, which the Second Circuit has rejected in analogous contexts.  See Powell v. Workmen's Comp. Bd., 327 F.2d 131, 137 (2d Cir. 1964) ("Indeed, were we to hold this complaint sufficient, we would be inviting every party to a state proceeding angered at delay to file a complaint in this court reciting the history of his state case and concluding with a general allegation of conspiracy.").  Moreover, it would run contrary to the Supreme Court's recent pleading guidance -- specifically in the context of conspiracy allegations -- that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The allegations in the complaint "must be placed in a context that raises a suggestion of a preceding agreement."  Id. at 557. Here, as in Twombly, Gropper points to conduct that, without more, "does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  Id.  Gropper's allegations do not, without more, give rise to any plausible inference that the

defendants made an agreement to deprive disabled individuals of their civil rights.

Gropper cites district court decisions accepting conspiracy claims in which plaintiffs were alleged to have been deliberately targeted. This is not such a case. Gropper's allegation that defendants engaged in the disability violations to order to avoid having to allocate restaurant space to disability access and thus to reap greater profits is wholly speculative. Striking that allegation, the complaint reads as an ordinary suit against a place of public accommodation alleging a failure to comply with various federal, state, and local disability protections.

Finally, Gropper cites one appellate case, Thomas, 165 F.3d at 146, to support the proposition that a conspiracy can be established by a tacit agreement. Thomas provides little help for Gropper. There, as here, the plaintiff pointed to the existence of illegal conduct and requested the court to conclude that there must have been "tacit approval" giving rise to a conspiracy. See id. at 146. The Second Circuit rejected his request, concluding that a tacit agreement cannot be supported by conclusory allegations. See id. at 147. For the same

reasons, Gropper's Section 1985 claim is dismissed.[2]

CONCLUSION

Nobu's November 15, 2013 motion to dismiss is granted in part. Claim One in the complaint, a conspiracy claim under 42 U.S.C. § 1985, is dismissed. The parties will be invited to address whether this action should not be stayed during the three-year term of the September 9, 2013 Voluntary Compliance Agreement between Nobu and the Department of Justice.

SO ORDERED:

Dated:   New York, New York
         April 3, 2014

                                           *Denise Cote*
                                 DENISE COTE
                          United States District Judge

---

[2] Having dismissed the Section 1985 claim on pleading grounds, this Court does not reach defendants' alternate argument that Gropper does not state a claim for which relief may be granted because Section 1985 does not protect against disability discrimination.

20